UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

S. Y.,

      Plaintiff,

v.                                    Case No: 2:20-cv-616-JES-MRM

BEST WESTERN INTERNATIONAL,
INC., R&M REAL ESTATE CO
INC DBA BEST WESTERN NAPLES
PLAZA HOTEL, and ROBERT
VOCISANO,

      Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of defendant Best Western International, Inc.'s Motion to Dismiss Counts I – IV of Plaintiff's Complaint and Memorandum in Support (Doc. #18) filed on October 2, 2020, and defendants R&M Real Estate Company, Inc. and Robert Vocisano Co-Tr's Motion to Dismiss with Prejudice Plaintiff's Complaint and Memorandum in Support (Doc. #20) filed on October 13, 2020. Plaintiff filed an Opposition (Doc. #37; Doc. #38) to each motion on November 6, 2020, to which the defendants filed a Reply (Doc. #48; Doc. #49) on November 19th and November 26, 2020. For the reasons set forth below, the motions are denied.

The origins of this case began on October 30, 2019, when plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida. See S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #1, p. 3). On December 31, 2019, the plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants. Id. at (Doc. #1, pp. 2-4). The case was removed to federal court in February 2020. Id. at (Doc. #1). On April 15, 2020, the plaintiffs filed a Second Amended Complaint. Id. at (Doc. #85). On August 5, 2020, the undersigned denied various motions to dismiss, but determined severance of the parties was appropriate. S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020). Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, and alleges that plaintiff S.Y., a resident of Collier County, Florida, was a victim of continuous sex trafficking at a certain Best Western Naples Plaza Hotel (the Best Western Hotel) in Naples, Florida between 2013 and February 2016. (Id. ¶¶ 2, 13, 22-24.) The Complaint alleges that during this time period the Best Western Hotel was owned and operated by defendants R&M Real

Estate Company, Inc. (R&M) and Robert Vocisano Co-Tr (Vocisano) as a franchisee of defendant Best Western International, Inc. (Best Western). (Id. ¶¶ 25-28, 51.)

The Complaint alleges the following six claims: (1) violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595; (2) violation of the Florida RICO statute, § 772.104, Florida Statutes; (3) premise liability; (4) negligent hiring, supervision, and retention; (5) negligent rescue; and (6) aiding and abetting, harboring, confining, coercion, and criminal enterprise. (Id. pp. 35-53.) Counts One through Four are asserted against each defendant, while Counts Five and Six are asserted against R&M and Vocisano. (Id.)

## II.

The motions raise numerous arguments as to why the Complaint as whole, and each individual claim, should be dismissed. The Court will address each of these arguments.

### A. Shotgun Pleading

The Complaint identifies the defendants collectively as the "Best Western Naples Plaza Hotel Defendants." (Doc. #1, p. 1 introductory paragraph.) Both motions argue that because the Complaint groups the defendants together, it should be dismissed as a shotgun pleading. (Doc. #18, p. 11; Doc. #20, p. 6.)

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against

3

multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 986 F.3d 1321, 1324-25 (11th Cir. 2021). Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and violates the requirement that a plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

The Complaint does indeed repeatedly refer to the defendants collectively as the "Best Western Naples Plaza Hotel Defendants." The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000). The Complaint typically (but not always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint. A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "Best Western Naples Plaza Hotel Defendants." While defendants may disagree that such allegations are accurate, that dispute is for another day. The group allegations do not fail to state a claim, Auto. Alignment & Body

Serv., Inc. v. State Farm Mut. Auto. Ins. Co., 953 F.3d 707, 732–33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.[1]

## B. Failure to State a Claim

The motions argue certain claims should be dismissed due to plaintiff's failure to state a claim upon which relief may be granted. Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing

---

[1] R&M and Vocisano also argue the Complaint is a shotgun pleading because each count adopts allegations previously asserted in the Complaint. (Doc. #20, p. 7.) The Court disagrees. While each claim adopts allegations previously made in the Complaint, the claims do not adopt *all* the allegations previously made. See Weiland, 792 F.3d at 1321 (describing most common type of shotgun pleading as "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"); Spigot, Inc. v. Hoggatt, 2020 WL 108905, *1 (M.D. Fla. Jan. 9, 2020) (dismissing complaint as shotgun pleading when each claim began by restating and re-alleging "each and every foregoing paragraph" of the complaint). Additionally, Best Western argues the Complaint contains "conclusory, vague, and immaterial facts about sex trafficking and why it is bad." (Doc. #18, p. 10.) However, the vast majority of the allegations at issue address sex trafficking's prevalence at hotels, the defendants' knowledge thereof, and the sex trafficking of plaintiff. (Doc. #1, ¶¶ 3, 5, 57-85, 91, 98, 129-36.) Given the type of claims being alleged, the Court disagrees that such allegations render the Complaint a shotgun pleading. Cf. Chudasama v. Mazda Motor Corp., 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (finding a shotgun pleading where "a reader of the complaint must speculate as to which factual allegations pertain to which count"); Cramer v. State of Fla., 117 F.3d 1258, 1261 (11th Cir. 1997) ("Cramer and Kessler's complaint is a rambling 'shotgun' pleading that is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming.").

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**(1) Trafficking Victims Protection Reauthorization Act**

Both motions challenge the one federal claim, the alleged violation of the TVPRA set forth in Count One.  The TVPRA provides a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

> (a)  Whoever knowingly –
>
> (1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless

disregard of the fact, that means of force, threats of
force, fraud, coercion described in subsection (e)(2),
or any combination of such means will be used to cause
the person to engage in a commercial sex act, or that
the person has not attained the age of 18 years and will
be caused to engage in a commercial sex act, shall be
punished as provided in subsection (b).

18 U.S.C. § 1591(a). To state a section 1595(a) claim in this
case, plaintiff must plausibly allege that she was a victim of a
criminal offense under section 1591(a), and then must plausibly
allege that defendant (1)"knowingly benefit[ted] financially or by
receiving anything of value," (2) from participation in a venture,
(3) which defendant "knew or should have known has engaged in" sex
trafficking under section 1591(a). <u>S.Y.</u>, 476 F. Supp. 3d at 1255-
56 (citing <u>A.B. v. Marriott Int'l, Inc.</u>, 455 F. Supp. 3d 171, 181
(E.D. Pa. 2020)).

### (a) "Participation" in a "Venture"

The motions argue that the Complaint lacks well-pled
allegations that defendants participated in a "venture," as
required by section 1595(a). (Doc. #18, pp. 14-15; Doc. #20, pp.
7-10.) Drawing on the definition of "venture" used in the criminal
portion of the statute, 18 U.S.C. § 1591(e)(6)[2], R&M and Vocisano
assert that a "venture" requires two or more individuals
"associated in fact." (Doc. #20, p. 7.) Borrowing from the

---

[2] "The term 'venture' means any group of two or more
individuals associated in fact, whether or not a legal entity."
18 U.S.C. § 1591(e)(6).

federal RICO definition of "enterprise," R&M and Vocisano argue
that "associated in fact" requires that persons must operate as a
"continuing unit that functions with a common purpose." (Id. p.
8.) R&M and Vocisano continue that in the context of a TVPRA claim
against a hotel operator, the Complaint must "at least" allege a
"continuous business relationship between the trafficker and the
hotels such that it would appear that the trafficker and the hotels
have established a pattern of conduct or could be said to have a
tacit agreement." (Id. p. 8) (citing M.A. v. Wyndham Hotels &
Resorts, Inc., 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019)); see
also Doe v. Rickey Patel, LLC, 2020 WL 6121939, *5 (S.D. Fla. Sept.
30, 2020) ("In order to plead Defendants participated in a venture,
Plaintiff must allege facts from which the Court could reasonably
infer the hotels could be said to have a tacit agreement with the
trafficker." (marks omitted)). R&M and Vocisano conclude that "a
commercial transaction," such as the rental of a hotel room, "does
not give rise to a reasonable inference that the participants in
such a transaction shared any common purpose or otherwise
'associated in fact.'" (Doc. #20, pp. 8-9.)

Here, the Complaint alleges the defendants participated in a
venture "by engaging in a pattern of acts and omissions that were
intended to support, facilitate, harbor, and otherwise further the
traffickers' sale and victimization of the Plaintiff S.Y. for
commercial sexual exploitation by repeatedly renting rooms at Best

Western Naples Plaza Hotel to people" the defendants "knew or should have known were engaged in sex trafficking." (Doc. #1, ¶ 160.) The Complaint also alleges why the defendants should have been on notice of the sex trafficking and how it failed to prevent it. (Id. ¶¶ 4-16, 57-85, 114.) The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a). See Doe, 2020 WL 6121939, *5 ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim."); M.A., 425 F. Supp. 3d at 971 ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").

The defendants also argue that "participation" in a venture requires an allegation of an overt act in furtherance of the venture, and that failure to prevent sex trafficking is insufficient. (Doc. #18, pp. 14-15; Doc. #20, p. 9.) The Court is not convinced. S.Y., 476 F. Supp. 3d at 1256 ("In the absence of any controlling authority, the Court concludes that actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595. Accordingly, plaintiffs' failure to allege such actual participation is not fatal to its

section 1595 claim under the TVPRA."). The defendants have not identified any controlling authority to the contrary.

**(b) Knowingly Benefited From Participating in Venture**

The motions also argue that the Complaint insufficiently alleges the defendants knowingly benefitted from participating in a venture that committed TVPRA crimes, with knowledge of the causal relationship. (Doc. #18, pp. 13-14; Doc. #20, pp. 10-11.) R&M and Vocisano argue that the allegation that it benefited generally from the operation of the hotel is insufficient for TVPRA liability. (Doc. #20, p. 10.)

The Complaint alleges the defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff S.Y. and her traffickers at the Best Western Naples Plaza Hotel," and by receiving "other financial benefits in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking." (Doc. #1, ¶ 158.) As to Best Western as franchisor, the Complaint alleges it "received a significant franchise fee and continuous royalties on the Best Western Naples Plaza Hotel's gross revenue," while also exercising "ongoing and systematic control over operations at the Best Western Naples Plaza Hotel." (Id. ¶¶ 45, 114.) The Court finds such allegations sufficient to satisfy the "knowingly benefitted" element. S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v. Lorain-Elyria Motel, Inc., 2020 WL 1244192, *5 (S.D. Ohio Mar. 16,

2020); <u>H.H. v. G6 Hosp., LLC</u>, 2019 WL 6682152, *2 (S.D. Ohio Dec. 6, 2019); <u>M.A.</u>, 425 F. Supp. 3d at 965.

### (c) Knew or Should Have Known that Venture was Committing Sex Trafficking Crimes

Both motions argue the Complaint fails to plausibly allege the defendants knew or should have known that the "venture" was engaging in sex-trafficking crimes, i.e., that the defendants knew or should have known that an adult plaintiff was caused to engage in commercial sex by force, threats of force, fraud, or coercion. (Doc. #18, pp. 15-18; Doc. #20, pp. 11-13.) The Court disagrees.

First of all, "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); <u>see</u> <u>Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC</u>, 904 F.3d 1197, 1215 (11th Cir. 2018). Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative—strictures of Rule 8." <u>Iqbal</u>, 556 U.S. at 686-87. The Complaint clearly satisfies this notice pleading standard.

Plaintiff has alleged that the following was "routine conduct taking place at the Best Western Naples Plaza Hotel as a result of the human sex trafficking enterprise":

    a. Plaintiff's sex traffickers frequently rented rooms at the hotel close to each other;

b. Plaintiff's sex traffickers paid cash for the rooms at the Best Western Naples Plaza Hotel where the Plaintiff engaged in commercial sex acts;

c. Plaintiff's sex traffickers booked extended stays at the Best Western Naples Plaza Hotel for themselves and for the Plaintiff on a routine basis and on a rotating basis frequently throughout the year;

d. Plaintiff and her sex traffickers would have few or no luggage or personal possessions for these extended stays;

e. Plaintiff was confined in the rooms at the Best Western Naples Plaza Hotel for long periods of time;

f. Plaintiff's rooms and her sex traffickers' rooms consistently displayed "Do Not Disturb" signs on the doors to the room where the Plaintiff was engaged in commercial sex acts;

g. Men ("Johns") frequently entered and left the rooms at the Best Western Naples Plaza Hotel where the Plaintiff was engaged in illegal commercial sex acts at all times of day and night;

h. The staff and customers at the Best Western Naples Plaza Hotel that was owned, operated, managed, supervised, controlled and/or otherwise held responsible by each and every Best Western Naples Plaza Hotel Defendant saw and/or reported to the Best Western Naples Plaza Hotel's respective administration that the rooms where the Plaintiff engaged in commercial sex acts were messy, and contained sex and drug paraphernalia and had an unclean smell;

i. The rooms at the Best Western Naples Plaza Hotel were stained with the Plaintiff's blood after she was beaten or violently raped;

j. Plaintiff's sex traffickers consistently refused housekeeping services and otherwise would prohibit staff from entering their rooms and the Plaintiff's rooms;

k. Plaintiff would frequently request clean towels and linens;

l. Plaintiff dressed in a sexually explicit manner and would walk the hallways of the Best Western Naples Plaza Hotel Defendant [sic];

m. Excessively loud noises would consistently come from Plaintiff's rooms;

n. During nighttime hours, Plaintiff and her "Johns" and drug clients would create noise in the public area of the Best Western Naples Plaza Hotel and, upon information and belief, would be a disturbance to other guests using the hotel for their intended purposes;

o. Plaintiff would sleep during the day and the staff members of the Best Western Naples Plaza Hotel would consistently see the Plaintiff wearing lounge or sleep type clothing during the day; and

p. While at the hotel, the Plaintiff displayed clear signs of physical abuse, diminished personal hygiene, submissiveness and inappropriate attire.

(Doc. #1, ¶ 98.)   Further, the Complaint alleges the defendants

"knew or should have known about the nature of the sex trafficking

venture at the Best Western Naples Plaza Hotel, including as they

related to Plaintiff S.Y." due to the following:

a. Requests by the traffickers to rent rooms near exit doors;

b. Cash payments for the rooms by the sex traffickers;

c. Refusal of housekeeping services by those persons engaged in sex trafficking;

d. Excessive used condoms located in the rooms used for sex trafficking;

e. Excessive requests for towels and linens in the rooms used for sex trafficking;

f. Hotel staff observing Plaintiff S.Y. and her traffickers in the hotel;

g. Plaintiff S.Y. being escorted by traffickers in and around the hotel;

h. Pleas and screams from [sic] help coming from the rooms of Plaintiff S.Y.;

i. Operation of sex trafficking ventures out of the same hotel room for multiple days or weeks in succession;

j. Multiple men per day coming and going from the same rooms without luggage or personal possessions; and

k. Knowledge of police and EMS activity at the Best Western Naples Plaza Hotel and at other locations near the Best Western Naples Plaza Hotel that was related to commercial sex work.

(Id. ¶ 159.)

The Court finds these allegations sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture. S.Y., 476 F. Supp. 3d at 1257; A.B., 455 F. Supp. 3d at 193-94; Doe S.W., 2020 WL 1244192, *5-6; H.H., 2019 WL 6682152, *3; M.A., 425 F. Supp 3d at 967-68.

### (d) Vicarious Liability

Finally, Best Western suggests there is no vicarious liability under the TVPRA. (Doc. #18, p. 6.) The Court disagrees. See S.Y., 476 F. Supp. 3d at 1257-58 (finding plaintiff made sufficient allegations that franchisor was vicariously liable under section 1595 of the TVPRA to survive dismissal); see also J.C. v. Choice Hotels Int'l, Inc., 2020 WL 6318707, *10 (N.D. Ca.

Oct. 28, 2020) (finding plaintiff's vicarious liability claim had "alleged sufficient facts to support a plausible claim that [defendants] received financial benefits from a venture they vicariously participate in (through their franchisees) that the franchises should have known was engaged in sex trafficking").

Best Western also argues that even if it could be held vicariously liable under the TVPRA, plaintiff's allegations are insufficient to establish an agency relationship between Best Western and its franchisees. (Doc. #18, pp. 6-8.) Having reviewed the allegations at issue, the Court finds them sufficient to create a plausible inference of an agency relationship.

"It is well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee." Cain v. Shell Oil Co., 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014). However, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities." Mobil Oil Corp. v. Bransford, 648 So. 2d 119, 120 (Fla. 1995).

Here, the Complaint alleges Best Western was in an agency relationship with R&M and Vocisano during the relevant time period. (Doc. #1, ¶ 114.) The Complaint further asserts that in a variety

of ways Best Western exercised control over the means and methods of how R&M and Vocisano conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing.  (Id. ¶ 115.)  The Court finds such allegations sufficient to support a plausible inference of an agency relationship.  See S.Y., 476 F. Supp. 3d at 1258; A.B., 455 F. Supp. 3d at 195-97; Doe S.W., 2020 WL 1244192, *7; H.H., 2019 WL 6682152, *6; M.A., 425 F. Supp. 3d at 972.[3]

---

[3] To the extent Best Western suggests such a relationship does not in fact exist, such a determination "is generally a question of fact for the jury unless the sole basis for the alleged agency rests in the interpretation of a single contract in which case the determination may be a question of law to be determined by the court."  Cain, 994 F. Supp. 2d at 1253.  Since the Complaint alleges an agency relationship based upon the interaction between Best Western and R&M and Vocisano, this is a question of fact inappropriate to decide on a motion to dismiss.  See Banco Espirito Santo Int'l, Ltd. v. BDO Int'l, B.V., 979 So. 2d 1030, 1032 (Fla. 3d DCA 2008) ("Unless the alleged agency relationship is to be proven exclusively by analysis of the contract between the principal and agent (in which case the question is an issue of law), the relationship is generally a question of fact and should be analyzed by looking at the totality of the circumstances."); see also A.B. v. Hilton Worldwide Holdings Inc., 2020 WL 5371459, *10 (D. Or. Sept. 8, 2020) ("Defendants dispute whether they controlled the day-to-day operations of the hotels.  Although Plaintiff may ultimately fail to establish the agency allegations, at this stage in the proceedings this Court accepts as true all well-pleaded factual allegations in the complaint and construes them in Plaintiff's favor."); A.B., 455 F. Supp. 3d at 196 ("The evidence may ultimately prove Marriott does not exercise day-to-day control over its Philadelphia Airport hotels, but this is more properly raised after discovery.").

Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies the motions for dismissal pursuant to Rule 12(b)(6).

**(2) Florida RICO Violation**

Count Two of the Complaint asserts a claim against the defendants under Florida's civil RICO statute, section 772.104, Florida Statutes. (Doc. #1, p. 37.) To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity." Horace-Manasse v. Wells Fargo Bank, N.A., 521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[4]

Both motions argue plaintiff has failed to plead Count Two with the heightened level of specificity required for RICO claims. (Doc. #18, pp. 18-19; Doc. #20, pp. 16-17.) Plaintiff responds that because the RICO claim is based on non-fraudulent predicate acts, the heightened pleading requirement is not applicable. (Doc. #37, p. 26; Doc. #38, p. 27.) The Court agrees with plaintiff.

---

[4] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in interpreting and applying the act. Therefore, federal decisions should be accorded great weight." O'Malley v. St. Thomas Univ., Inc., 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); see also Cont'l 332 Fund, LLC v. Albertelli, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

While the Eleventh Circuit has described RICO claims as "essentially a certain breed of fraud claims" that "must be pled with an increased level of specificity" consistent with Rule 9 of the Federal Rules of Civil Procedure, Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 681 (11th Cir. 2014), such a standard applies only when the RICO claim is based on fraud or mistake, see D. Penguin Bros. Ltd. v. City Nat'l Bank, 587 F. App'x 663, 666 (2d Cir. 2014) ("In the RICO context, a plaintiff must plead predicate acts sounding in fraud or mistake according to the particularity requirement of Rule 9(b); for other elements of a RICO claim—such as non-fraud predicate acts or . . . the existence of an 'enterprise'—a plaintiff's complaint need satisfy only the 'short and plain statement' standard of Rule 8(a)."); Cardenas v. Toyota Motor Corp., 418 F. Supp. 3d 1090, 1098 (S.D. Fla. 2019) ("[B]ecause particularity pleading under Rule 9(b) is limited to circumstances constituting fraud, the non-fraud elements of a RICO claim can be alleged under Rule 8(a) standards." (citations and marks omitted)).  As the predicate acts in plaintiff's RICO claim are not based in fraud, the Court finds Rule 9 is not applicable. See Magnifico v. Villanueva, 783 F. Supp. 2d 1217, 1229, 1229 n.9 (S.D. Fla. 2011) (in addressing RICO allegations, court applied Rule 9(b) to "fraud-related predicate acts," such as mail, wire, and immigration document fraud, and Rule 8 to "non-fraud predicate acts," such as human trafficking).

The defendants also argue that plaintiff lacks standing because personal injuries cannot be remedied by RICO. (Doc. #18, p. 19; Doc. #20, p. 17.) There is some authority to suggest the Florida RICO statute, unlike the federal equivalent, does not "expressly limit recovery" to persons who have suffered injury to their business or property, and that recovery for personal injuries may be allowed. Berber v. Wells Fargo Bank, N.A., 2018 WL 10436236, *3 (S.D. Fla. May 24, 2018) (collecting cases). The motion will be denied on this basis.

Plaintiff's RICO claim is asserted under sections 772.104(1) and (2), which provide civil remedies for violations of section 772.103, Florida Statutes. (Doc. #1, ¶ 162.) Section 772.103 contains four subsections of prohibited activities. § 772.103, Fla. Stat. R&M and Vocisano argue that because plaintiff fails "to specify the particular subsection of Section 772.103 giving rise to a Florida RICO claim," the claim is defective. (Doc. #20, p. 14.) Plaintiff fails to address this argument in her response.

This court has previously stated that a RICO claim's failure to identify which subsection of section 772.103 is implicated is sufficient to warrant dismissal. Lennon v. Marriott Ownership Resorts, Inc., 2019 WL 1440092, *10 (M.D. Fla. Mar. 31, 2019); Signeo Int'l Ltd. v. Wade, 2013 WL 12153590, *6 (M.D. Fla. Apr. 1, 2013). However, the Court finds dismissal unnecessary in this case because it is apparent which subsection plaintiff is relying

upon.  Section 772.103(3) makes it unlawful for any person associated with any enterprise to conduct or participate in such enterprise through a pattern of criminal activity.  In the Complaint, plaintiff alleges the defendants "conducted or participated in . . . the affairs of their respective RICO Enterprises through a pattern of numerous acts of racketeering activity . . . in violation of Fla. Stat. § 772.103."  (Doc. #1, ¶ 167.)  Because this allegation tracks the language of subsection three, the Court finds it provides sufficient notice of the applicable provision.  Accordingly, the Court denies R&M and Vocisano's request for dismissal on this basis.

Each of the motions also argues plaintiff has insufficiently pled the enterprise element of her claim.  (Doc. #18, p. 20; Doc. #20, pp. 14-16.)  Florida's RICO statute defines enterprise to include a "group of individuals associated in fact although not a legal entity."  § 772.102(3), Fla. Stat.  "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose."  Boyle v. United States, 556 U.S. 938, 948 (2009).  To sufficiently plead such an enterprise, "a plaintiff must allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose."  Cisneros v.

Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted).

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges the defendants "associated with each other and/or the Plaintiff S.Y.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme." (Doc. #1, ¶ 166.) Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme." (Id. ¶¶ 166-67.) The Court finds these allegations sufficient to allege the defendants "shared the purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United

States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting
that "an association's devotion to 'making money from repeated
criminal activity' . . . demonstrates an enterprise's 'common
purpose of engaging in a course of conduct'" (citations omitted));
Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp.
3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO
claim, court found that "Plaintiff's Amended Complaint can be read
to allege a 'common purpose' of furthering an institutionalized
prostitution scheme to increase profits for the participants," and
that "[t]hese allegations, though thin, are sufficient for
purposes of this motion").

Best Western also argues the Complaint fails to sufficiently
plead the "pattern of criminal activity" element. (Doc. #18, pp.
19-20.) As previously stated, "[i]n order to state a civil cause
of action under the Florida RICO Act, a plaintiff must allege a
pattern of criminal activity." Arthur v. JP Morgan Chase Bank,
NA, 569 F. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104,
Fla. Stat.). The statute's definition of "criminal activity"
provides "that a particular state law crime can serve as the
predicate act for a RICO claim if it is 'chargeable by indictment
or information' and falls within a series of specified provisions."
Id. (citing § 772.102(1)(a), Fla. Stat.). "In order to establish
a pattern of criminal activity, the plaintiff must allege two or
more criminal acts 'that have the same or similar intents, results,

accomplices, victims, or methods of commission' that occurred within a five-year time span." Id. at 680 (citing § 772.102(4), Fla. Stat.).

Plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes. (Doc. #1, ¶¶ 168, 170); see also § 772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute). This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking." § 787.06(3), Fla. Stat.

The Complaint alleges plaintiff was trafficked on a "regular, consistent and/or repeated basis" at various hotels in Naples, Florida, and at the Best Western Hotel beginning in 2013. (Doc. #1, ¶ 86.) The Complaint describes how the sex trafficking occurred at the Best Western Hotel and the "routine conduct" taking place as a result, as well as alleges the defendants' employees participated in the trafficking, made promises to the traffickers not to interfere with it, and knowingly turned a blind eye to it. (Id. ¶¶ 90-91, 93, 98, 134-36.) Viewing the allegations in the

light most favorable to plaintiff, the Court finds them sufficient to allege a pattern of criminal activity for purposes of Florida's RICO statute.

Accordingly, the Court finds the Complaint's Florida RICO claim sufficiently pled and therefore will deny the motions to dismiss the claim.[5]

### (3) Premise Liability

Count Three of the Complaint asserts a claim of premise liability against each defendant. (Doc. #1, p. 40.) A premise liability claim is a form of negligence action. "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition." Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). Plaintiff alleges the defendants owed her a variety of duties, that they breached these duties, and that as a direct and proximate result, she suffered bodily injury. (Doc. #1, ¶¶ 183-97.) Plaintiff also alleges the defendants had actual or constructive knowledge of sex trafficking occurring on

---

[5] To the extent Best Western argues plaintiff fails to state a plausible claim for RICO conspiracy (Doc. #18, pp. 20-21), the Court finds this issue moot. Although plaintiff uses the phrase "conducted or participated in, or conspired to conduct or participate in, the affairs" of the RICO enterprises (Doc. #1, ¶ 167), there does not appear to be a separate conspiracy claim within Count Two.

the premises, that they knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that they had actual or constructive knowledge of the dangerous condition plaintiff was in. (Id. ¶¶ 188-90.)

### (a) Statute of Limitations

The motions argue the premise liability claim should be dismissed because it is barred by the relevant statute of limitations. (Doc. #18, pp. 21-22; Doc. #20, p. 18.) Under Florida law, the statute of limitations for negligence claims is four years. § 95.11(3)(a), Fla. Stat.

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted). "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted).

Plaintiff alleges the sex trafficking occurred at the Best Western Hotel "from approximately 2013 and continuing through approximately February of 2016." (Doc. #1, ¶ 13.) Both defendants argue that because plaintiff did not file her lawsuit until

December 2019, her premise liability claim is at least partially time barred. (Doc. #18, p. 22; Doc. #20, p. 18.)

"Under Florida law, the statute of limitations begins to run when the cause of action accrues." Carnival Corp. v. Rolls-Royce PLC, 2009 WL 3861482, *5 (S.D. Fla. Nov. 17, 2009) (citing § 95.031, Fla. Stat.). "A cause of action accrues when the last element constituting the cause of action occurs." § 95.031(1), Fla. Stat. "Under the continuing tort doctrine, the cause of action accrues when the tortious conduct ceases." Effs v. Sony Pictures Home Entm't, Inc., 197 So. 3d 1243, 1244 (Fla. 3d DCA 2016) (emphasis and citation omitted). "A continuing tort is established by continual tortious acts, not by continual harmful effects from an original, completed act." Id. at 1245 (marks, emphasis, and citation omitted).

Here, plaintiff alleges she was a repeat victim of sex trafficking at the Best Western Hotel between 2013 and February 2016. The Court finds such allegations sufficient to invoke the continuing tort doctrine. See Nat'l Sourcing, Inc. v. Bracciale, 2018 WL 6172430, *2 (M.D. Fla. Nov. 26, 2018) (finding allegation that a defendant's actions "continued to this day" inferred continuous tortious conduct, thereby making it plausible for the plaintiffs to assert the continuing tort doctrine as a basis to toll the statute of limitations). Accordingly, the Court finds that plaintiff's premise liability claim did not accrue until

February 2016, and therefore she had until February 2020 to file a complaint asserting premise liability.

### (1) Best Western

Plaintiff met this deadline by filing her First Amended Complaint against Best Western on December 31, 2019. <u>S.Y. et al v. Naples Hotel Co. et al</u>, Case No. 2:20-cv-118 (Doc. #3). While the Court determined severance of the parties was appropriate in the original action, <u>S.Y.</u>, 476 F. Supp. 3d at 1259, and this Complaint was filed in August 2020, it appears that the December 2019 date is applicable for statute of limitations purposes under the relation-back provisions of Rule 15(c) of the Federal Rules of Civil Procedure.

> Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision. See <u>McCurdy v. United States</u>, 264 U.S. 484, 487, 44 S.Ct. 345, 346, 68 L.Ed. 801 (1924); <u>Moore v. Baker</u>, 989 F.2d 1129, 1131 (11th Cir. 1993). Under Rule 15, a claim in an amended complaint relates back to the filing date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When the facts in the original complaint do not put the defendant "on notice that the new claims of negligence might be asserted," but the new claims instead "involve[ ] separate and distinct conduct," such that the plaintiff would have to prove "completely different facts" than required to recover on the claims in the original complaint, the new claims do not relate back. <u>Moore</u>, 989 F.2d at 1132.

<u>Caron v. NCL (Bahamas), Ltd.</u>, 910 F.3d 1359, 1368 (11th Cir. 2018). Accordingly, since it is not apparent from the face of the

Complaint that the claim is time-barred, dismissal based upon the statute of limitations affirmative defense is not appropriate.

### (2) R&M and Vocisano

R&M and Vocisano were not named in the December 2019 First Amended Complaint.  Rather, they were first added as defendants in April 2020.  S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #85.)  Nonetheless, the Court declines to dismiss based on the statute of limitations.  As noted, plaintiff is not required to negate an affirmative defense in her complaint.  La Grasta, 358 F.3d at 845.  It is not apparent from the face of the Complaint that the claim is time-barred because the Court cannot determine that plaintiff's premise liability claim does not relate back to the First Amended Complaint or is not subject to statutory or equitable tolling.[6]  Therefore, the motion to dismiss is denied at this stage of the proceedings.

To the extent R&M and Vocisano seek dismissal of the other negligence claims on the same grounds (Doc. #20, p. 18), the Court's ruling applies to those claims as well.[7]

---

[6] "The doctrine of equitable tolling was developed to permit under certain circumstances the filing of a lawsuit that otherwise would be barred by a limitations period."  Machules v. Dep't of Admin., 523 So. 2d 1132, 1133 (Fla. 1988); see also Fed. Deposit Ins. Corp. v. Nationwide Equities Corp., 304 So. 3d 1240, 1243-44 (Fla. 3d DCA 2020); § 95.051, Fla. Stat.

[7] R&M and Vocisano also suggest the negligence-based claims fail because plaintiff does not allege the specific dates upon which the acts occurred.  (Doc. #20, p. 18).  The Court disagrees.

**(b)   Failure to State a Claim**

Both defendants challenge the duty element of the premise liability claim.  Best Western argues the claim fails because the allegations of agency are insufficient.  (Doc. #18, pp. 22-23.) However, as the Court has determined otherwise, Best Western's argument is rejected.  R&M and Vocisano argue there could be no duty to protect plaintiff from the criminal conduct of third parties because such conduct was not foreseeable.  (Doc. #20, pp. 18-19.)  The Court disagrees with this argument as well.

"Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition. This includes the duty to protect customers from criminal attacks that are reasonably foreseeable."  Banosmoreno v. Walgreen Co., 299 F. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

Id. (marks, citations, and footnote omitted).  Such knowledge must only be pled generally.  Fed. R. Civ. P. 9(b).

---

See Watts v. City of Port St. Lucie, Fla., 2016 WL 633716, *3 (M.D. Fla. Feb. 17, 2016) ("The failure to allege the dates does not, alone, render the claims implausible under Twombly, given the other factual allegations in the First Amended Complaint.").

The Complaint contains sufficient allegations that sex trafficking was occurring at the Best Western Hotel and that the defendants knew or should have known of it. (Doc. #1, ¶¶ 57-64, 98-107, 159.) The Complaint also contains sufficient allegations to support a claim of an agency relationship between Best Western and R&M and Vocisano, and any factual challenge to such a relationship is premature. See Cain, 994 F. Supp. 2d at 1253; Mobil Oil Corp., 648 So. 2d at 120. Accordingly, the Court finds the allegations in the Complaint are sufficient to satisfy the notice pleading requirements.

Best Western also argues the claim fails because the Complaint does not plausibly allege that it possessed or controlled the premises. (Doc. #18, p. 23.) The Court disagrees. As noted, a premise liability claim requires a defendant possess or control the premises at issue. Lisanti, 787 So. 2d at 37. Here, the Complaint alleges the defendants were the "owners, operators, managers, supervisors, controllers and innkeepers" of the Best Western Hotel, and that Best Western exercised control over the means and methods of how R&M and Vocisano conducted business at the hotel.[8] (Doc. #1, ¶¶ 30, 115.) While Best Western may dispute

---

[8] Attached to both motions are a Collier County Property Appraiser summary and a warranty deed listing R&M and/or Vocisano as the owner(s) of the hotel property. (Doc. #18-1, p. 26; Doc. #18-2, pp. 27-30; Doc. #20-1, p. 26; Doc. #20-2, pp. 28-31.) The defendants request the Court take judicial notice of these records to prove ownership of the hotel at issue. (Doc. #18, pp. 5-6;

these allegations, the Court must accept them as true at this stage of the proceedings and finds them sufficient to allege Best Western had sufficient control of the hotel for premise liability purposes.

### (4) Negligent Hiring, Supervision, and Retention

Count Four of the Complaint asserts a claim of negligent hiring, supervision, and retention against the defendants. (Doc. #1, p. 45.) The motions seek dismissal of the claim based on pleading deficiencies. The defendants first argue plaintiff has improperly lumped multiple claims together. (Doc. #18, pp. 23-24; Doc. #20, p. 19.) "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). The Court finds that the claims are properly set forth in a single count.

To state a claim for negligent hiring, plaintiff must allege facts showing that

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the

---

Doc. #20, p. 4.) The Court declines to do so. See Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC, 369 F.3d 1197, 1204 (11th Cir. 2004) (recognizing that "a court has wide discretion to take judicial notice of facts"). The Court has found the Complaint sufficiently alleges an agency relationship between Best Western and R&M and Vocisano. Accordingly, whether R&M and/or Vocisano are listed on public records as the owner of the Best Western Hotel is not dispositive to any of the claims alleged in the Complaint.

> unsuitability of the employee for the particular duty to
> be performed or for employment in general; and (3) it
> was unreasonable for the employer to hire the employee
> in light of the information he knew or should have known.

Groover v. Polk Cty. Bd. of Cty. Comm'rs, 460 F. Supp. 3d 1242,

1251 (M.D. Fla. 2020) (quoting Malicki v. Doe, 814 So. 2d 347, 362

(Fla. 2002)). "Different from negligent hiring, '[n]egligent

retention occurs when, during the course of employment, the

employer becomes aware or should have become aware of problems

with an employee that indicated his unfitness, and the employer

fails to take further action such as investigating, discharge, or

reassignment.'" Id. (quoting Degitz v. S. Mgmt. Servs., Inc., 996

F. Supp. 1451, 1461 (M.D. Fla. 1998)). "Florida law also holds

employers liable for reasonably foreseeable damages resulting from

the negligent training of its employees and agents." Clary v.

Armor Corr. Health Servs., Inc., 2014 WL 505126, *4 (M.D. Fla.

Feb. 7, 2014) (citing Lewis v. City of St. Petersburg, 260 F.3d

1260, 1265 (11th Cir. 2001)). "For an employer to owe a plaintiff

a duty, the plaintiff must be in the zone of risk that was

reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege
> facts that would establish a nexus between the plaintiff
> and the tortfeasor's employment from which a legal duty
> would flow from the defendant-employer to the plaintiff.
> The plaintiff must then establish that the defendant-
> employer breached that duty and that the breach caused
> him damage.

Id. (citations omitted).

The Complaint alleges each defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that each defendant had a duty to make an appropriate investigation of the employees. (Doc. #1, ¶¶ 205-06.) The Complaint further alleges that the defendants knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers." (Id. ¶¶ 208-10.) The Complaint concludes that the defendants were negligent in their hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result. (Id. ¶¶ 211-15.) The Court finds these allegations sufficient to state plausible claims for negligent hiring, and negligent supervision/retention.

Both motions argue there are insufficient allegations that the defendants knew of any unfit employees and failed to act. (Doc. #18, p. 24; Doc. #20, p. 20); see also Bright v. City of Tampa, 2017 WL 5248450, *8 (M.D. Fla. May 17, 2017) ("When an employer fails to take a corrective action against an employee because the employer had no notice of problems with the employee's fitness, the employer is not liable under Florida law for negligent supervision or retention."). The Court disagrees. The Complaint

sufficiently alleges facts suggesting sex trafficking was occurring at the hotel, that the employees knew of it and failed to prevent it, and that due to their control over the employees, each defendant knew or should have known of it. (Doc. #1, ¶¶ 90-111, 202-210.) The Court finds such allegations sufficient at this stage of the proceedings.

R&M and Vocisano further argue the claim should be dismissed because the Complaint does not identify the alleged employees at issue. (Doc. #20, p. 20.) The Complaint alleges "[e]ach and every" defendant "was in control of the hiring" of hotel employees, and responsible for "instructing, training and supervising," yet employees failed "to refuse continued lodging services to human sex traffickers" and failed "to either identify and/or report the human sex trafficking." (Doc. #1, ¶¶ 205, 209-10.) The Court is required to accept all factual allegations as true, Erickson, 551 U.S. at 94, and "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes," Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv., 493 F. App'x 994, 995 (11th Cir. 2012). The Court finds that specific employees are not required to be named.[9] Accordingly, the Court

---

[9] To the extent Best Western suggests it did not hire any of the employees at the hotel (Doc. #18, p. 24), the Complaint alleges that Best Western made "employment decisions" for the hotel. (Doc. #1, ¶ 115.)

denies the request to dismiss the negligent hiring, supervision, and retention claim.

**(5) Negligent Rescue**

Count Five of the Complaint asserts a claim of negligent rescue against R&M and Vocisano. (Doc. #1, p. 47.) The Complaint alleges R&M and Vocisano, as the owners and operators of the Best Western Hotel, had a duty to keep the premises safe and prevent foreseeable criminal activity, as well as a duty "to make safe a dangerous condition at the Best Western Naples Plaza Hotel and to rescue their hotel guests, specifically Plaintiff S.Y., from the peril they created." (Id. ¶¶ 220, 223, 229.) The Complaint alleges that by various acts and omissions, R&M and Vocisano breached these duties and that the continuous sex trafficking of plaintiff was the direct and foreseeable result. (Id. ¶¶ 225-27, 231-32, 234.) R&M and Vocisano argue the negligent rescue claim should be dismissed because it is insufficiently pled. (Doc. #20, pp. 21-22.)

There is no common law duty to rescue a stranger. Estate of Ferguson v. Mascara, 2010 WL 11558195, *2 (S.D. Fla. Sept. 7, 2010) (citing Bradberry v. Pinellas Cty., 789 F.2d 1513, 1516 (11th Cir. 1986)). "A well-established exception to this rule, however, provides that an innkeeper is 'under an ordinary duty of care to [a guest] after he knows or has reason to know the [guest] is ill or injured.'" De La Flor v. Ritz-Carlton Hotel Co., L.L.C, 2013

WL 148401, *3 (S.D. Fla. Jan. 14, 2013) (quoting L.A. Fitness, Int'l, LLC v. Mayer, 980 So. 2d 550, 557 (Fla. 4th DCA 2008)); see also Abramson v. Ritz Carlton Hotel Co., LLC, 480 F. App'x 158, 161 (3d Cir. 2012) ("Generally, there is no duty to affirmatively assist an injured person unless a special relationship, such as that between an innkeeper and its guests, exists between the parties." (citation omitted)).

R&M and Vocisano argue that hotels only have a limited duty to render aid to a guest it knew or should have known was ill or injured, and that the Complaint contains no plausible facts to suggest R&M and Vocisano knew plaintiff was in need of aid. (Doc. #20, p. 21.) However, the Court finds the Complaint contains sufficient allegations to satisfy this requirement. (Doc. #1, ¶¶ 98, 99, 230.)

### (6) Aiding and Abetting, Harboring, Confining, Coercion and Criminal Enterprise

Finally, Count Six of the Complaint asserts a claim of aiding and abetting against R&M and Vocisano. (Doc. #1, p. 50.) The Complaint accuses R&M and Vocisano of "aiding and abetting unlawful activity including unlawful confinement, imprisonment, assault and battery by [plaintiff's] sex traffickers and 'Johns.'" (Id. ¶ 230.) R&M and Vocisano argue that the claim must be dismissed because it is overly vague, fails to articulate a cognizable,

independent cause of action, and lacks well-pled factual allegations. (Doc. #20, p. 22.) The Court disagrees.

Florida courts have recognized aiding and abetting the commission of a tort as a standalone claim. See Gilison v. Flagler Bank, 303 So. 3d 999, 1002 (Fla. 4th DCA 2020) (aiding and abetting fraud); MP, LLC v. Sterling Holding, LLC, 231 So. 3d 517, 527 (Fla. 3d DCA 2017) (aiding and abetting breach of fiduciary duty). This Court has previously listed the following elements that must be alleged "to state a claim for aiding and abetting a common law tort" under Florida law: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter [sic]; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." Angell v. Allergan Sales, LLC, 2019 WL 3958262, *8 (M.D. Fla. Aug. 22, 2019); see also Lawrence v. Bank of Am., N.A., 455 F. App'x 904, 906 (11th Cir. 2012) (applying the above elements to three Florida tort claims). These cases demonstrate Florida recognizes a common-law claim of aiding and abetting tortious conduct.

The Court finds plaintiff's allegations are not impermissibly vague and, to the extent they allege actual knowledge[10], are

---

[10] "[A]llegations which demonstrate merely constructive knowledge, recklessness or gross negligence cannot satisfy the

sufficient to state a claim.  Therefore, the Court denies R&M and Vocisano's request for dismissal.

**C. Personal Jurisdiction**

Finally, Best Western argues the Court lacks personal jurisdiction over it in this matter.[11] (Doc. #18, pp. 8-10.)  This Court has previously described the personal jurisdiction requirements as follows:

> To hear a case, a federal court must have jurisdiction over both the subject matter of the action and the parties to the action. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999). Absent either, "the court is powerless to proceed to an adjudication." Id.
>
> A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant if: (1) personal jurisdiction is authorized under the forum state's long-arm statute and (2) the exercise of such jurisdiction comports with constitutional due process. Carmouche v. Tamborlee Mgmt., Inc., 789 F.3d 1201, 1203 (11th Cir. 2015); Licciardello v. Lovelady, 544 F.3d 1280, 1283 (11th Cir. 2008). The exercise of personal

---

'knowledge' element of an aiding and abetting claim under Florida law." Angell, 2019 WL 3958262, *9.

[11] Typically, the Court would address the personal jurisdiction issue first, since "[a] court without personal jurisdiction is powerless to take further action." Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).  However, because plaintiff asserts personal jurisdiction over Best Western based in part on tortious acts committed within Florida (Doc. #38, p. 14), it was first necessary to determine whether the Complaint stated a cause of action against Best Western.  See PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 808 (11th Cir. 2010) ("In Florida, before a court addresses the question of whether specific jurisdiction exists under the long-arm statute, the court must determine 'whether the allegations of the complaint state a cause of action.'" (quoting Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002)).

jurisdiction comports with due process if the non-resident defendant has established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

The plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009). A prima facie case is established if the plaintiff alleges enough facts to withstand a motion for directed verdict. SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997) (citation omitted). "First, the plaintiff must allege sufficient facts in [its] complaint to initially support long arm jurisdiction before the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute." Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000) (citation omitted). If the defendant sustains its burden by raising "a meritorious challenge to personal jurisdiction" "through affidavits, documents[,] or testimony," the burden shifts back to the plaintiff. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996). Plaintiff is then required to "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." Future Tech. Today, Inc., 218 F.3d at 1247 (citation omitted).

Pennisi v. Reed, 2018 WL 3707835, *2 (M.D. Fla. Aug. 3, 2018) (footnote and marks omitted). If the plaintiff's complaint and the defendant's evidence conflict, "the district court must construe all reasonable inferences in favor of the plaintiff." Thomas v. Brown, 504 F. App'x 845, 847 (11th Cir. 2013) (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)).

Florida's long-arm statute authorizes general and specific personal jurisdiction. § 48.193(1)-(2), Fla. Stat. Section 48.193(2) addresses the exercise of general personal jurisdiction, providing that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." In contrast, "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1352 (11th Cir. 2013) (citation omitted).

Best Western argues plaintiff has failed to meet her burden of alleging sufficient facts to make out a prima facie case of jurisdiction. (Doc. #18, p. 8.) Specifically, Best Western argues the Court lacks both general and specific jurisdiction over it. (Id. pp. 8-10.) Plaintiff responds that the allegations are sufficient to establish specific jurisdiction over Best Western (Doc. #38, p. 14), and the Court agrees.

Section 48.193(1)(a)(2), Florida Statutes, provides that a person "who personally or through an agent" commits a tortious act within this state "thereby submits himself or herself . . . to the

jurisdiction of the courts of this state for any cause of action arising from . . . [c]ommitting a tortious act within this state." "The statute expressly requires that the tort be committed in Florida." <u>Casita, L.P. v. Maplewood Equity Partners L.P.</u>, 960 So. 2d 854, 857 (Fla. 3d DCA 2007). "In analyzing whether tortious conduct has occurred within Florida, courts have looked to whether the nonresident defendant committed a substantial aspect of the alleged tort in Florida." <u>NHB Advisors, Inc. v. Czyzyk</u>, 95 So. 3d 444, 448 (Fla. 4th DCA 2012) (marks and citation omitted); <u>see also</u> <u>Internet Sols. Corp. v. Marshall</u>, 557 F.3d 1293, 1296 (11th Cir. 2009) ("For the purposes of the [long-arm] statute, the defendant does not have to be physically present in Florida for the tortious act to occur within that state."); <u>3Lions Publ'g, Inc. v. Interactive Media Corp.</u>, 389 F. Supp. 3d 1031, 1037 (M.D. Fla. 2019) ("Under the long-arm statute, a nonresident defendant need not have a physical presence in Florida for the Court to assert personal jurisdiction. Instead, such a nonresident defendant need only commit a tortious act that causes injury within Florida." (citations omitted)).

Because the Court has found the allegations of an agency relationship between Best Western and R&M and Vocisano are sufficient, the Court also finds the Complaint contains allegations that Best Western committed tortious conduct within Florida sufficient to establish specific jurisdiction. <u>See</u> <u>Faro</u>

Techs. Inc. v. CimCore Corp., 2006 WL 4975982, *5 (M.D. Fla. June 27, 2006) (noting that "[i]n Florida, a corporation may be subject to jurisdiction when it commits a tortious act or transacts business through its agents in the forum state"); see also Doe S.W., 2020 WL 1244192, *3 (finding specific jurisdiction over Best Western where the plaintiff alleged, *inter alia*, (1) that sex trafficking was occurring in the forum and Best Western was willfully blind to its prevalence at hotel locations, (2) that Best Western failed to adequately train and monitor its properties in the forum while receiving profits from the forum hotels, and (3) that there was "a causal connection between Best Western's activities managing hotels in [the forum] and the harm to plaintiff as a result of her sex trafficking in these hotel locations"). Therefore, the Court denies Best Western's request to dismiss for lack of personal jurisdiction.

Accordingly, it is now

**ORDERED:**

1. Defendant Best Western International, Inc.'s Motion to Dismiss Counts I – IV of Plaintiff's Complaint and Memorandum in Support (Doc. #18) is **DENIED.**

2. Defendants R&M Real Estate Company, Inc. and Robert Vocisano Co-Tr's Motion to Dismiss with Prejudice Plaintiff's Complaint and Memorandum in Support (Doc. #20) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __7th__ day of June, 2021.

 

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record